**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| J. SCOTT BILTON, BILLI JO BILTON, CAREY WIGGINS, and SYDNEY WIGGINS,<br><br>Plaintiffs,<br><br>vs.<br><br>WEYERHAEUSER CORPORATION and THE UNITED STATES OF AMERICA,<br><br>Defendants. | No. 2:25-cv-09705-DCN<br><br>**ORDER** |

This matter is before the court on the United States of America's (the "Government") motion to dismiss, ECF No. 25. Also before the court is Weyerhaeuser Corporation's ("Weyerhaeuser") motion to strike the demand for a jury trial and to bifurcate certain issues for separate trials and its amended motion to strike. ECF Nos. 34, 38. For the reasons set forth below, the court grants in part and denies in part the Government's motion and denies Weyerhaeuser's motions.

## I. BACKGROUND

This suit arises from a dispute over property rights in Cooper Ridge Road (or, the "Road") in Berkeley County, South Carolina. ECF No. 13, Amend. Compl. ¶¶ 16–61. Generally, Cooper Ridge Road provides access to a portion of the Francis Marion National Forest.

### A. Background

In 1977, International Paper Company ("International Paper") owned a parcel of land identified as TMS #061-00-00-038 ("Revised Plot 038"), consisting of

approximately 201.89 acres. Id. ¶ 13. On December 16, 1977, International Paper granted the Government an easement (the "Easement") through a recorded deed (the "Easement Deed") for an access road over Revised Plot 038 that is now known as Cooper Ridge Road. Id. ¶¶ 15–16; see also ECF No. 26-3 (the Easement Deed).

Cooper Ridge Road begins at a turn from the Santee River Road in Berkeley County; it then runs across Revised Plot 038 for approximately one mile before crossing onto 3,814 acres of land owned by the United States Forest Service ("USFS") within the greater Francis Marion National Forest. See ECF Nos. 25 at 6–7, 26-9, 26-18 at 3. This parcel of the National Forest is bordered by private property or the Santee River Road at various points to the south while the Santee River forms the parcel's northern boundary. See ECF Nos. 25 at 7, 26-29, 26-38. Due to this geography, the Government claims that Cooper Ridge Road is the "only road access" to this section of the Francis Marion National Forest. ECF No. 25 at 7; see also ECF Nos. 26-29, 26-38.

When the Government obtained the Easement, Revised Plot 038 consisted of land on both the east and west sides of Cooper Ridge Road. See ECF No. 26-3 at 5. On December 17, 2008, International Paper conveyed Revised Plot 038 to Plum Creek Timberlands, L.P. ("Plum Creek"). See Amend. Compl. ¶ 18; ECF No. 26-5 (Quitclaim Deed from International Paper to Plum Creek). In 2014, Plum Creek subdivided Revised Plot 038's 201.89 acres into two parcels consisting of 127.07 acres and 74.82 acres, the latter parcel laying east of Cooper Ridge Road and the former laying to the west of the road. See Amend. Compl. ¶ 19; ECF No. 26-6 (Recorded Survey of Subdivision). On August 15, 2014, Plum Creek conveyed the 74.82 acre parcel to Bryan Mims ("Mims"). See Amend. Compl. ¶¶ 21–25; ECF Nos. 26-6, 26-7 (Deed from Plum Creek to Mims).

After this transfer, Plum Creek retained the residual 127.07 acres, which retained the designation TMS #061-00-00-038. See ECF No. 26-6. The recorded survey subdividing Revised Plot 038 indicates that the land underlying Cooper Ridge Road was included in Plum Creek's residual 127.07 acres. See id.

Weyerhaeuser came to own the 127.07 acres comprising Revised Plot 038 after merging with Plum Creek on December 16, 2016. Amend. Compl. ¶ 28; ECF No. 26-8 (Affidavit of Merger). Weyerhaeuser subsequently conveyed Revised Plot 038 to plaintiffs Carey and Sydney Wiggins (the "Wiggins") by special warranty deed ("Weyerhaeuser-Wiggins Deed") on January 28, 2021. Amend. Compl. ¶ 43; ECF No. 26-10 (Special Warranty Deed from Weyerhaeuser to Wiggins). Although the Weyerhaeuser-Wiggins Deed specifically referred to the property being transferred as TMS #061-00-00-038, the deed only purported to convey "123.96 acres, more or less"— not 127.07 acres. Amend. Compl. ¶ 40; ECF No. 26-3 at 4. The recorded survey accompanying the transfer from Weyerhaeuser to Wiggins similarly indicates a transfer of only 123.96 acres and shows the property line for Revised Plot 038 running alongside, but not including, Cooper Ridge Road. See ECF No. 26-9. This survey suggests that, after the Weyerhaeuser-Wiggins transfer, Weyerhaeuser retained ownership of the Cooper Ridge Road subject to the Government's easement while the Wiggins owned the land directly to the west of Cooper Ridge Road. See ECF Nos. 26-9, 26-10.

In April 2021, the Wiggins further subdivided Revised Plot 038 into four parcels, creating two smaller parcels and two larger parcels. Amend. Compl. ¶ 45; ECF Nos. 26-11, 26-12. The Wiggins then conveyed one of the smaller parcels and one of the larger parcels to plaintiffs J. Scott and Billi Jo Bilton (the "Biltons") (together, with the

Wiggins, "Plaintiffs") by quitclaim deed (the "Wiggins-Bilton Deed"), leaving the Wiggins with the remaining two parcels. Amend. Compl. ¶ 45; ECF Nos. 26-11, 26-12.

In February 2024, Weyerhaeuser executed a quitclaim deed (the "Weyerhaeuser-USFS Quitclaim Deed") purporting to convey Cooper Ridge Road to the Government. Amend. Compl. ¶ 57; ECF No. 26-13 (Quitclaim Deed from Weyerhaeuser to the Government).

**B. Plaintiffs' Allegations**

Concerning the Weyerhaeuser-Wiggins transfer, Plaintiffs allege that Weyerhaeuser, through its agent, advertised the sale of all 127.07 acres comprising Revised Plot 038 in 2020. Amend. Compl. ¶ 29. The Wiggins then "explicitly communicated" to Weyerhaeuser's agent that they would purchase the entirety of Revised Plot 038. Id. ¶ 32. Despite the Wiggins' title abstractor determining the acreage for Revised Plot 038 to consist of 127.07 acres, their land surveyor allegedly captured only 123.96 acres—an error the Wiggins' closing attorney "did not notice[.]" Id. ¶ 35–37. Plaintiffs further allege that the Weyerhaeuser-Wiggins Deed "did not include language that stated there was residual acreage remaining in Weyerhaeuser's possession[ ]" because "no residual acreage was intended to remain in Weyerhaeuser's possession." Id. ¶¶ 41–42. Prior to the execution of the Wiggins-Bilton Deed, Plaintiffs claim that the Wiggins paid "property taxes on 127.07 acres to Berkeley County[ ]" in 2021. Id. ¶ 44.

Between 2014 and 2019, Plaintiffs allege that Mims (their neighbor on the other side of Cooper Ridge Road) maintained the road through "leveling, limbing, and graveling" while USFS performed "no maintenance" from 2013 to 2021. Id. ¶ 26, 27.

Since 2021, Plaintiffs assert that they have made valuable improvements to Cooper Ridge Road, including graveling, adding utilities and lighting, as well as installing a fence and gate. Id. ¶ 47.

By the fall of 2021, the Biltons asked the USFS for an update on maintenance for Cooper Ridge Road due to the presence of a large hole bordering the road and their property. Id. ¶¶ 48–49. Thereafter, USFS graded Cooper Ridge Road, "destroy[ing] the work that Mims and Plaintiffs had done to maintain the road" because "USFS pulled all dirt from the ditches up onto the road and buried the gravel." Id. ¶ 50. The USFS then informed Plaintiffs that Cooper Ridge Road was open for "public use" and that Plaintiffs would be liable "for any claims by the public should something happen on the road." Id. ¶ 52. Plaintiffs responded that "public use" was not consistent with the language of the Easement Deed and, on advice of counsel, placed "a gate on Cooper Ridge Road" with a code to allow USFS access while excluding members of the public. Id. ¶¶ 53–54. The Government and Plaintiffs then attempted to negotiate a settlement but were ultimately unsuccessful. Id. ¶ 56.

Despite their "good faith negotiations," Plaintiffs contend that in February 2024 "someone in the USFS discovered the 2021 surveying error and asked . . . Weyerhaeuser to execute a quit claim deed in favor of the USFS for any residual property." Id. ¶ 57. Plaintiffs allege that "recently" the Government threatened penalties if Plaintiffs did not remove the gate, and Plaintiffs' complied by opening the gate as "a show of good faith[.]"[1] Id. ¶¶ 60–61.

[1] The Government submits that Plaintiffs' gate was a "hot topic" on a local South Carolina duck hunting forum. ECF No. 25 at 12. One duck hunting enthusiast

### C. Procedural History

Plaintiffs initiated this suit against the Government and Weyerhaeuser in the Berkeley County Court of Common Pleas on June 11, 2025. ECF No. 1-1, Compl.; Bilton et al. v. Weyerhaeuser Co. et al., Case No. 2025-CP-08-01961 (Berkeley Cnty. Ct. C.P. Jun. 11, 2025). The Government removed the action to this court on August 5, 2025, asserting jurisdiction pursuant to 28 U.S.C. §§ 1346(f), 1441(a). ECF No. 1 ¶¶ 6–7. Plaintiffs thereafter filed an amended complaint on September 22, 2025, asserting six causes of action. ECF No. 13, Amend. Compl. First, Plaintiffs assert a claim against the Government to quiet title in Revised Plot 038 pursuant to 28 U.S.C. § 2409a (the "QTA").[2] Id. ¶¶ 62–68. Second, Plaintiffs assert a claim against the Government and Weyerhaeuser to reform the Wiggins-Weyerhaeuser deed on the ground of mutual mistake. Id. ¶¶ 69–78. Third, they advance a claim against only the Government to limit the scope of the Easement Deed to USFS use and exclude public access on Cooper Ridge Road. Id. ¶¶ 79–83. Fourth, Plaintiffs assert a claim for inverse condemnation against the Government. Id. ¶¶ 84–96. Fifth, Plaintiffs assert a claim for unjust enrichment against the Government and Weyerhaeuser. Id. ¶¶ 97–101. Plaintiffs' sixth claim is for slander of title, asserted against both the Government and Weyerhaeuser. Id. ¶¶ 102–10.

The Government moved to dismiss each of the six claims on December 17, 2025. ECF No. 25. The Government moved to dismiss the first three causes of action pursuant

---

purportedly remarked "Got bolt cutters? A public road is a public road." Id. at 13 (emphasis omitted).

[2] The QTA governs claims against the Government where there is "a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The district courts retain exclusive jurisdiction over QTA claims. See 28 U.S.C. § 1346(f).

to Rule 12(b)(6), arguing Plaintiffs fail to state claims upon which relief can be granted. Id. at 3. On the remaining three claims, the Government moved to dismiss pursuant to Rule 12(b)(1), arguing the court lacked jurisdiction over those claims. Id. at 2. Plaintiffs responded in opposition on December 31, 2025, ECF No. 28, and the Government replied on January 9, 2026, ECF No. 31. Plaintiffs filed a notice of additional authority regarding the Government's request for judicial notice of certain documents on March 12, 2026, ECF No. 33, to which the Government did not respond.

On March 17, 2026, Weyerhaeuser moved to strike Plaintiffs' demand for a jury trial pursuant to Federal Rule of Civil Procedure 12(f) and to bifurcate certain claims for separate trials pursuant to Rule 42(b). ECF No. 34 at 1. Plaintiffs responded in opposition on March 30, 2026, ECF No. 36, and Weyerhaeuser replied on April 6, 2026, ECF No. 37. On that same day, Weyerhaeuser amended their previous motion to clarify that its request to strike was made pursuant to Rule "12(f) and/or Rule 39(a)." ECF No. 38. Plaintiffs responded in opposition on April 20, 2026, ECF No. 41, to which Weyerhaeuser did not reply. The court held a hearing on the motions on June 6, 2026. ECF No. 48. As such, the motions are fully briefed and now ripe for the court's review.

## II. STANDARDS

### A. Rule 12(b)(6): Failure to State a Claim

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability

of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

**B. Rule 12(b)(1): Lack of Subject-Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge whether a federal court has subject-matter jurisdiction to adjudicate the claims before it. Fed. R. Civ. P. 12(b)(1). When the factual basis for subject-matter jurisdiction is challenged, the burden of proving subject-matter jurisdiction rests with the non-moving party. Richmond, Fredericksburg, and Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When the movant challenges the factual basis of subject-matter jurisdiction, apart from the pleadings, the district court "may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings[.]" Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir. 2009). Consideration

of such evidence does not convert the motion to one for summary judgment, but the district court should only grant a Rule 12(b)(1) motion to dismiss when the jurisdictional facts are not disputed and the movant is entitled to prevail as a matter of law. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also McBurney v. Cuccinelli, 616 F.3d 393, 409 (4th Cir. 2010); Richmond, Fredericksburg, and Potomac R. Co., 945 F.2d at 768 (instructing district courts to apply modified summary judgment framework to Rule 12(b)(1) motions).

**C. Rules 12(f) and 39(a): Motion to Strike Demand for a Jury Trial**

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may act "on its own or on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Id. (cleaned up). Rule 39(a)(2) provides that, when a jury trial is demanded, "trial on all issues so demanded must be by jury unless: . . . the court, on motion or on its own, finds that on some or all of the issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

Though the Seventh Amendment right to a jury trial is considered "fundamental[,]" it can be "knowingly and intentionally waived by contract." Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986); see also U.S. Const. amend. VII. "Where waiver is claimed under a contract executed before litigation is contemplated, . . . the party seeking enforcement of the waiver must prove that consent was both voluntary and informed." Leasing Serv. Corp., 804 F.2d at 833. Due to the strong federal policy favoring jury trials, "courts have typically 'indulge[d] every reasonable presumption

against waiver.'" Mowbray v. Zumot, 536 F. Supp. 2d 617, 620 (D. Md. 2008) (quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937)). "[T]he right to a jury trial in federal courts is to be determined as a matter of federal in diversity as well as other actions." Simler v. Conner, 372 U.S. 221, 222 (1963); see Topline Sols., Inc. v. Sandler Sys., Inc., 131 F. Supp. 3d 435, 438 (D. Md. 2015).

**D. Rule 42(b): Motion to Bifurcate Issues for Separate Trials**

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims[.]" Fed. R. Civ. P. 42(b). Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1444-45 (4th Cir. 1993). Whether to grant a motion to bifurcate is within the sound discretion of the district court. Toler v. Gov't Emps. Ins. Co., 309 F.R.D. 223, 225 (S.D.W. Va. 2015) (citing Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1953)). Separating the trial of claims, however, "is not to be routinely ordered." Fed. R. Civ. P. 42(b), 1966 Advisory Comm. Note. Bifurcation of issues for separate trials "should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule." 9A Charles A. Wright & Aurthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2008).

## III. DISCUSSION

The court will first take up the Government's motion to dismiss before turning to Weyerhaeuser's motion to strike and bifurcate certain issues for separate trials.

**A. Government's Motion to Dismiss**

The Government seeks dismissal of Plaintiffs' first, second, and third claims pursuant to rule 12(b)(6). ECF No. 25 at 3. The Government relies on many documents

that are not attached to the amended complaint in support of its arguments. See generally id. As a preliminary matter, the court will first address the Government's request for the court to take judicial notice of those documents. Then, the court addresses the Government's Rule 12(b)(6) challenges to Plaintiffs' first three claims, first taking up the second claim followed by the first and third. The court then addresses whether Plaintiffs' remaining three causes of action are subject to dismissal pursuant to Rule 12(b)(1).

**1. Judicial Notice**

The Government requests the court take judicial notice of forty-four (44) documents attached to its motion to dismiss and asks the court to consider those documents in ruling on the instant motion. Id. at 3–5. The Government contends that judicial notice is proper pursuant to Federal Rule of Evidence 201. Id. at 3–4. Plaintiffs object to the court considering these documents, largely arguing that taking judicial notice of these documents would be premature for various reasons. See ECF No. 28 at 5–13. The court finds that it need not decide whether the forty-four (44) documents are subject to judicial notice because, even if the court were to take judicial notice of those documents, the Government still fails to conclusively show that Plaintiffs are not entitled to relief on their first three claims. As such, the court assumes without deciding that the forty-four (44) documents attached to the Government's motion are subject to judicial notice solely for the purpose of resolving the Government's motion to dismiss.

**2. Second Claim: Reformation Due to a Mutual Mistake Between Weyerhaeuser and Wiggins**

Plaintiffs' second claim seeks reformation of the Wiggins-Weyerhaeuser Deed on the ground of mutual mistake. Amend. Compl. ¶¶ 69–78. The Government seeks dismissal of this claim on three bases: (1) Plaintiffs do not plead the existence of a prior

agreement; (2) certain deeds in Revised Plot 038's chain of title make the existence of a mutual mistake implausible; and (3) Plaintiffs do not plead allegations that satisfy the clear and convincing evidence threshold required to prove mutual mistake. ECF No. 25 at 22–25. The court takes the arguments in turn.

A mutual mistake between the grantor and grantee is a ground on which a court may reform an instrument conveying title to real property. See Sims v. Tyler, 281 S.E.2d 229, 642 (S.C. 1981). For equity to permit such reformation, "it must be shown by evidence which is most clear and convincing . . . that it was [not] a mistake on the part of one of the parties but that it was a mutual mistake[ ]" between both parties to the transaction. Id. "A mutual mistake is one whereby both parties intended a certain thing but because of a mistake in drafting did not get what they intended." Timms v. Timms, 348 S.E.2d 386, 389 (S.C. Ct. App. 1986).

**a. Prior Agreement not Required**

The Government first argues that Plaintiffs "fail to allege facts [sufficient] to show the prior contract or its terms." ECF No. 25 at 25. To support this argument, the Government appears to rely on language from a dated South Carolina Supreme Court opinion:

> It must appear that the precise terms of the contract had been orally agreed upon between the parties and that the written instrument actually signed fails to be, as it was intended, an execution of the previous agreement, but expresses a different contract; and that this is the result of a mutual mistake. If there is no antecedent agreement to which the writing can be conformed, it is clear that reformation on the ground of mistake must be refused.

ECF No. 25 at 24 (quoting Gowdy v. Kelley, 194 S.E. 156, 160 (S.C. 1937)) (emphases added). Though it is unclear whether a prior written agreement was required for claims of mutual mistake at the time Gowdy was decided, more recent opinions from South

Carolina appellate courts demonstrate that a court need only compare the written agreement to what the parties actually intended; an "antecedent written agreement" is not required. See, e.g., Timms, 348 S.E.2d at 389 (affirming trial court's finding of mutual mistake when "respondents proved by clear and convincing evidence that both [parties] intended equality of acreage" in dividing their land, "but failed to carry out this intention because of mutual mistake as to the total acreage involved[ ]" without discussing the necessity of a prior agreement); Sims, 281 S.E.2d at 230 (reversing trial court's reformation of deed after looking at evidence of parties' intent without discussing any requirement of antecedent written agreement). Thus, to the extent the Government asserts that a prior written agreement between Weyerhaeuser and Wiggins is required, the court rejects that argument.

**b. The Deeds**

The Government next argues that the Wiggins-Weyerhaeuser Deed, the Wiggins-Bilton Deed, and the Weyerhaeuser-USFS Quitclaim Deed make the existence of a mutual mistake implausible. Put differently, the Government takes the position that these deeds definitively prove the absence of a mutual mistake as a matter of law.

The Government first points to the Wiggins-Weyerhaeuser Deed, noting that it was signed by the Wiggins and describes Revised Plot 038 as 123.96 acres in size—not 127.07 acres—and the recorded survey "place[s] Cooper Ridge Road outside of [the Wiggins'] newly acquired property." Id. (citing ECF Nos. 26-10 (Weyerhaeuser-Wiggins Deed), 26-9 (Survey)). The Wiggins-Bilton Deed, the Government notes, similarly provides for the division of only 123.96 acres, and the recorded survey—signed by all four Plaintiffs—"sets the [divided] parcels to the west side of Cooper Ridge Road."

ECF No. 25 at 25 (citing ECF No. 26-11). Despite making these observations, the Government does not explain their implication. See ECF No. 25 at 25. But presumably the Government points to the deeds to prove that Plaintiffs could not have been mistaken as to whether they were receiving title to Cooper Ridge Road. See id.

While both deeds constitute some evidence that the Wiggins might not have been mistaken as to whether they would receive title to Cooper Ridge Road, neither conclusively establishes that the Wiggins were not mistaken as a matter of law. See Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts[ ] [or] the merits of a claim[.]"). Indeed, the deeds offered by the Government are the very same deeds that Plaintiffs allege to be the result of mistake, see Amend. Compl. ¶ 17, and the Government fails to provide an example of a court relying on allegedly erroneous deeds to dispose of a reformation claim on a motion to dismiss, see ECF No. 25. This court will not be the first. As such, the court finds that neither deed offered by the Government is conclusive evidence of the absence of a mistake on the Wiggins' part.

Next, the Government points to the Weyerhaeuser-USFS Quitclaim Deed. It argues that this deed establishes that Weyerhaeuser made no mistake in transferring only 123.96 acres to the Wiggins. ECF No. 26 at 25. Plaintiffs respond that a "quitclaim deed does not guarantee the quality of title, but only conveys that which the grantor may lawfully convey[.]" ECF No. 28 at 19 (quoting Mulherin–Howell v. Cobb, 608 S.E.2d 587, 594 (S.C. Ct. App. 2005)). Thus, Weyerhaeuser's execution of a quitclaim deed does not detract from Plaintiffs' claim of mutual mistake because their amended complaint alleges that Weyerhaeuser had no property to convey to the USFS. Plaintiffs

are correct on this point. But, more significantly, Weyerhaeuser's post-sale conduct only constitutes some evidence as to its intentions at the time of the Weyerhaeuser-Wiggins transaction; it does not conclusively prove its intentions. As such, because none of the deeds conclusively establish either parties' intent, the court declines to dismiss Plaintiffs' reformation claim; the presence of a mutual mistake is still plausible notwithstanding the deeds. See Iqbal, 556 U.S. at 678.

When arguing that Plaintiffs' QTA claim should be dismissed, the Government goes one step further and asks the court to summarily deem it the fee simple owner of Cooper Ridge Road using the same recorded documents. See ECF No. 25 at 13–15 ("[T]he documents very simply and plainly establish that the Plaintiffs never owned the Cooper Ridge Road easement."). This argument ignores that Plaintiffs' reformation claim, should they prevail, would allow them to obtain title to Cooper Ridge Road regardless of whom the register of deeds currently indicates to be the owner. Because the court declines to dismiss the reformation claim, see infra p. 17, the court likewise declines the Government's bid to have the court summarily adjudicate this title dispute in their favor on a motion to dismiss.

**c. Plaintiffs' Allegations are not Conclusory**

Next, the court considers whether Plaintiffs have plausibly alleged a mutual mistake. The Government calls Plaintiffs' allegations "wholly conclusory." ECF No. 25 at 25; see also ECF No. 38 at 9–10. Regarding their claim of mutual mistake, Plaintiffs allege as follows:

> ¶ 29: Weyerhaeuser, through its agents, advertised the sale of the remaining 127.07 acres.

> ¶ 31: Plaintiff Wiggins contracted with Weyerhaeuser through Waddell to purchase Revised Plot 038[ ] [i.e., those remaining 127.07 acres].
>
> ¶ 32: Plaintiffs explicitly communicated to Waddell that they intended to purchase the entirety of Revised Plot 038.
>
> ¶ 33: Both parties to the transaction intended to convey the entirety of Revised Plot 038.
>
> ¶ 34: Unbeknownst to both parties, the surveyor of the land erred and failed to include the land upon which Cooper Ridge Road sits, as well a strip of land on the back of the property.
>
> ¶ 35: A title abstracter, hired by Plaintiffs' closing attorney, determined the acreage for Revised Plot 038 is 127.07.
>
> ¶ 36: Despite this, the surveyor did not notice that his survey captured only 123.96 acres.
>
> ¶ 37: Despite the title abstractor's finding, the closing attorney did not notice that the survey captured only 123.96 acres.
>
> ¶ 38: The deed, drafted by Weyerhaeuser, transferring ownership to Plaintiff Wiggins referenced the 123.96 acres, based upon the erroneous survey.
>
> ¶ 41: The deed, drafted by Weyerhaeuser, did not include language that stated there was residual acreage remaining in Weyerhaeuser's possession.
>
> ¶ 42: This was because no residual acreage was intended to remain in Weyerhaeuser's possession.
>
> ¶ 44: After purchase, Plaintiff Wiggins paid 2021 property taxes on 127.07 acres to Berkeley County.

Amend. Compl. ¶¶ 29, 31–38, 41–42, 44. These allegations provide sufficient detail for the court to draw the reasonable inference that Weyerhaeuser's transfer of only 123.96 acres to the Wiggins was "a mistake in drafting" whereby neither "g[ot] what they intended." <u>See</u> <u>Timms</u>, 348 S.E.2d at 389; <u>Iqbal</u>, 556 U.S. at 678 (holding that a claim is facially plausible when the court is able draw the "reasonable inference that the defendant is liable for the misconduct alleged."). And while the Government emphasizes that

Plaintiffs fail "to include allegations that satisfy the clear and convincing standard necessary to prove mutual mistake[,]" ECF No. 25 at 25, a plaintiff need not furnish conclusive proof of a claim at the pleadings stage, see Iqbal, 556 U.S. at 678. Having considered and rejected each of the Government's arguments for dismissing Plaintiffs' reformation claim, the court will allow the claim to proceed.

### 3. First Cause of Action: Quiet Title

The court now addresses the Government's challenges to Plaintiffs' first claim, which seeks to quiet title in Revised Plot 038 under the QTA. To clarify whether Plaintiffs seek to quiet title using a termination theory as opposed to an abandonment theory, the court first addresses the Government's argument that Plaintiffs "fail[ ] to allege facts that would satisfy federal law regarding the abandonment of easements." ECF Nos. 26 at 18, 31 at 6–7.

#### a. Plaintiffs Plead a Termination Theory, not Abandonment

Generally, Plaintiffs' first claim seeks "an order from this Court confirming their full and complete ownership of their respective portions of Revised Plot 038." Amend. Compl. ¶¶ 67–68. For Plaintiffs to obtain full and complete ownership of Cooper Ridge Road, the Easement Deed stands in their way. And so, within their first claim, Plaintiffs allege that the USFS, through its inactions, triggered a termination clause contained in the Easement Deed. Amend. Compl. ¶¶ 66–67. The relevant language of the termination clause, quoted in the amended complaint, provides that "if for a period of five (5) years," the USFS "shall cease to use, or preserve for prospective future use, the road, or any segment there of [sic], . . . the easement traversed shall thereby terminate." ECF No. 26-3 at 3; see Amend. Compl. ¶ 17. Later in the amended complaint, Plaintiffs plead that,

"should the Court determine that USFS has not abandoned the Easement," they are still seeking a declaration that the Easement only permits the USFS to use the road—not the general public.[3] Amend. Compl. ¶¶ 78, 82 (emphasis added).

Notwithstanding their passing use of the term "abandoned," Plaintiffs are seeking ownership of Cooper Ridge Road, unencumbered by the Easement, on the basis of the Easement Deed's termination clause. See Amend. Compl. ¶¶ 66–67. Seeking to dismiss any claim of "abandonment," the Government relies on a number of cases to establish that the Government does not abandon, i.e., disclaim, its interest in property absent authorization from an agency official with congressional authorization to take such action,[4] nor does it abandon property by failing to restrict public access or through the negligence of federal officials.[5] One case cited by the Government—Haworth v. United

---

[3] Put differently, if Plaintiffs succeed in proving mutual mistake but fail to prove the Easement terminated, they still wish to limit the scope of the Easement to exclude public access on Cooper Ridge Road.

[4] See Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 739–40 (8th Cir. 2001) (concluding that opinion of a junior agency official stating the Government held a lakebed in trust for Indian tribe did not abandon the Government's claim to fee simple title in the lakebed because the official lacked "Congressional authorization to abandon" the Government's interest therein); Cheyenne Arapaho Tribes of Okla. v. United States, 558 F.3d 592, 597–98 (D.C. Cir. 2009) (holding that statements made by two congressman that were counter to the "United States' continuing adverse interest in property" could not "undermine the official actions taken by Congress in 1937 and 1948" affirming the United States interest in the property at issue); Warren v. United States, 234 F.3d 1331, 1338 (D.C. Cir. 2000) ("[T]he Government cannot abandon property without congressional authorization.").

[5] See Kingman Reef Atoll Invs. L.L.C. v. United States, 541 F.3d 1189, 1199 (9th Cir. 2008) (holding that Government did not "abandon[ ] its claims of a possessory interest in public lands merely because it failed to enforce restrictions upon public access."); id. at 1201 (The Government "does not abandon its claims to property by inaction."); United States v. California, 332 U.S. 19, 39–40 (1947) (holding that United States did not abandon claims to subsurface oil leases off California coast when "agencies ha[d] been negligent in failing to recognize . . . the claims of the [federal] Government" on the mistaken assumption that "California owned the lands.").

States, 461 F. Appx. 739, 748 (10th Cir. 2012)—concerned a claim that the Government sought to build a road that exceeded the scope of its easement over the plaintiff's property. The plaintiff in Haworth argued (1) that a USFS employee abandoned the Government's easement through a letter sent decades earlier, and (2) even if the Government did not abandon its easement, that the proposed USFS road exceeded the scope of the Government's easement. Id. at 746–52. The Tenth Circuit considered the abandonment and easement scope issues separately, see id., and the court finds that analysis instructive. Because Plaintiffs do not allege that the Government attempted to disclaim its interest in Cooper Ridge Road through the actions of a Government official, Plaintiffs have not pleaded a theory of "abandonment." The Government's argument that Plaintiffs have not sufficiently pleaded such a theory is therefore misplaced.[6] The court considers Plaintiffs' theory to be that the Easement terminated pursuant to the termination clause in the Easement Deed. See Amend. Compl. ¶¶ 66–67. Whether that claim can survive a motion to dismiss depends on the amended complaint's allegations and the language of the termination clause—not federal law regarding the abandonment of easements. See Haworth, 461 F. Appx. at 748–49 (applying state law to determine whether Government's proposed road was within the scope of its easement).

**b. Plaintiffs Plausibly Allege Termination**

Even without resorting to federal law concerning abandonment of easements, the Government still argues that Plaintiffs fail to allege facts that "come remotely close to

[6] The Government later argues that certain maps disseminated by federal agencies demonstrate "that it never abandoned the easement." ECF No. 25 at 20–21 (citing ECF Nos. 25-33, 25-34, 25-35, 25-36, 25-37). Because this argument rests on the misplaced assumption that Plaintiffs pled a theory of abandonment, the court need not further consider the argument.

alleging the Forest Service['s] conduct satisfies the Easement's termination clause." ECF No. 25 at 16; see also ECF No. 31 at 8. The Government asserts that only paragraphs 27 and 66 of the Amended Complaint are relevant to Plaintiffs' termination theory:

> ¶ 27: The USFS performed no maintenance on Cooper Ridge Road from 2013 until 2021.
>
> ¶ 66: Defendant USFS ceased to use, or preserve for prospective use, Cooper Ridge Road, or any segment thereof, for a period of more than 5 years, specifically from in or about 2013 until 2021.

Amend. Compl. ¶¶ 27, 66; see ECF No. 25 at 16. Even accepting the "no maintenance" allegation as true, the Government argues that "there are no allegations that the Road fell into disrepair such that it would no longer be usable in the future." ECF No. 25 at 16. The Government acknowledges that Plaintiffs allege that Mims, a neighbor on the opposite side of the road, maintained the road through "maintenance includ[ing] leveling, limbing, and gravelling the road[,]" Amend. Compl. ¶ 26, but argues that such actions are consistent with the language in the Easement Deed requiring the grantor "to bear[ ] . . . road maintenance costs only, proportionate to use[,]" ECF No. 26-3 at 3; see ECF No. 26 at 16–17.

Plaintiffs respond that the amended complaint contains additional allegations that support their termination theory:

> ¶ 26: Bryan Mims maintained Cooper Ridge Road from 2014 until 2019, which maintenance included leveling, limbing, and graveling the road.
>
> ¶ 47: Since 2021, Plaintiffs made valuable improvements to Revised Plot 038, which improvements include graveling of Cooper Ridge Road, adding utilities and lighting equipment, and installing a fence and gate on the property.
>
> ¶ 48: In the fall of 2021, Plaintiff Bilton began asking the USFS for updates on maintenance plans for Cooper Ridge Road.

> ¶ 49: Specifically, there was a very large hole on the road along the property line on the USFS side that continuously encroached onto the Biltons' property.
>
> ¶ 66: Defendant USFS ceased to use, or preserve for prospective use, Cooper Ridge Road, or any segment thereof, for a period of more than 5 years, specifically from in or about 2013 until 2021.

Am. Compl. ¶¶ 26, 47–49, 66; see ECF No. 28 at 16. Accepting these allegations as true, they make it plausible that the USFS ceased "to use, or preserve for prospective future use, the road or any segment thereof" for a period of five years between 2013 and 2021—i.e., that the Easement's termination clause was satisfied by the USFS's conduct (or lack thereof). See ECF No. 26-3 at 3; Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). While Mims allegedly performing maintenance himself may not be inconsistent with the Easement Deed, those actions have no bearing on whether the USFS did or did not engage in conduct that triggered the termination clause. Moreover, the allegation that Mims was maintaining the Road—supplemented by the allegation that Plaintiffs had to call the USFS's attention to a hole in the Road—further support Plaintiffs' claim of the USFS's failure to maintain the road. See Amend. Compl. ¶¶ 26, 47–49.

The Government further notes that the termination clause is triggered when the grantee "cease[s] to . . . preserve [the road] for prospective or future use[ ]" for a period of five years. ECF No. 26-3 at 3; see ECF No. 25 at 16. Because "there is no allegation the Road fell into disrepair such that it would no longer be usable in the future[,]" the Government contends that Plaintiffs termination theory is not plausible. ECF No. 25 at 16. But, this argument ignores that the termination clause could also be triggered by the

grantee merely "ceas[ing] to use[ ] . . . the road" for a period of five years. ECF No. 26-3 at 3. Thus, the absence of allegations describing the road in a state of total disrepair does not foreclose Plaintiffs' termination theory. As such, accepting Plaintiffs' allegations relating to termination to be true, the court can draw the reasonable inference that the clause may have been triggered through the inaction of the USFS. Accordingly, the court will not dismiss the termination theory for lack of particularity.

**c. QTA's Particularity Requirement**

Next, the Government argues that Plaintiffs fail to satisfy additional pleading requirements set forth in the QTA. The QTA states:

> The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a(d).

For support, the Government cites to a pair of cases where district courts dismissed QTA claims due to a plaintiff's failure to comply with Section 2409a(d)'s pleading requirements. See ECF No. 26 at 17–18. In the first, a district court in Utah found that a county failed to satisfy Section 2309a(d) with allegations that it was "the owner of the highway rights-of-way shown on the map attached to its amended complaint" because the county offered only "conclusory allegations" that did not identify "with particularity any interest in real property[,]" nor did the county "describe the circumstances under which any property interest was acquired." Washington Cnty. v. United States, 903 F. Supp. 40, 42 (D. Utah 1995) (quotation marks omitted). In the second, a district court in New Mexico dismissed a county's QTA claim because the county failed to allege the actual location, . . . length, course, precise width, starting

point, or end point[,]" instead only providing a "general location of the alleged right of way[.]" Bd. of Comm'rs of Catron Cnty., N.M. v. United States, 934 F. Supp. 2d 1298, 1307–08 (D.N.M. 2013). In addition, the county "never explain[ed] how title to the alleged right of way would have vested . . . in some other, unidentified entity[ ]" before being transferred to the county. Id. at 1308.

Plaintiffs argue the amended complaint does not suffer from the deficiencies described in either case, and the court agrees. First, the amended complaint leaves no question as to the "nature of the right, title, or interest which the plaintiff claims in the real property," 28 U.S.C. § 2409a(d), because Plaintiffs assert ownership over "[a]ll 127.07 acres of the Revised Plot 038" or the "in the land under which Cooper Ridge Road runs[,]" Amend. Compl. ¶¶ 65, 77. Second, the amended complaint alleges the USFS's non-use of the road—with additional supporting details—for the time period required under the termination clause, which constitutes the "circumstances under which [Plaintiffs' interest] was acquired[.]" 28 U.S.C. § 2409a(d); see Amend. Compl. ¶¶ 26, 47–49, 66. Third, the amended complaint sufficiently alleges "the right, title, or interest claimed by the United States[,]" 28 U.S.C. § 2409a(d), because it asserts that the USFS obtained a quitclaim for the property in February 2024, Amend. Compl. ¶¶ 57–58. As such, the amended complaint satisfies each element of Section 2409a(d)'s pleading requirements. Because Plaintiffs' QTA claim is plausibly alleged and not otherwise subject to dismissal as a matter of law, the court will allow the claim to proceed.

**4. Third Cause of Action: Scope of the Easement**

Plaintiffs' third cause of action seeks an order from the court confirming that the scope of the easement allows use by the USFS alone—not the general public. Amend.

Compl. ¶ 83. On two bases, the Government moves to dismiss the claim: first, it argues that the claim is time-barred under the QTA's twelve-year statute of limitations; second, it argues the language of the deed unambiguously includes public access, subjecting the claim to dismissal as a matter of law. The court addresses these arguments in turn.

**a. QTA's Statute of Limitations**

The QTA has a twelve-year statute of limitations:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g) (emphasis added). As per the language of the statute, the limitations period begins to run when either the plaintiff or the plaintiff's "predecessor in interest knew or should have known" of a claim against the Government. Id. Plaintiffs filed their complaint in state court on August 5, 2025, meaning any instance of notice to Plaintiffs' predecessors in interest prior to August 5, 2013, would suffice to show that the statute of limitations has run on Plaintiffs' third cause of action. See id.

Regarding notice, the QTA does not require actual knowledge of a claim against the Government. Lombard v. United States, 194 F.3d 305, 309 (1st Cir. 1999). Instead, the phrase "should have known" in Section 2409a(g) imparts a "test of reasonableness." Shultz v. Dep't of Army, 886 F.2d 1157, 1160 (9th Cir. 1989). Knowledge of the full contours of the claim is not required; all that is necessary is a "reasonable awareness that the Government claims some interest adverse to the plaintiff's." Spirit Lake Tribe, 262 F.3d at 738; see also Hein v. United States, 2017 WL 9324517, at *5 (D. Mont. Jul. 14, 2017) (finding that "notice of a Government claim that created even a cloud on the title"

was "sufficient to trigger the limitations period." (internal quotation marks and citations omitted)); D.C. Transit Sys., Inc. v. United States, 531 F. Supp. 808, 812 (D.C. Cir. 1982) (phrasing Section 2409a(g)'s statute of limitations as requiring notice that "is enough to excite attention and put the party on his guard"). "[T]he trigger for starting the QTA limitations period" is therefore "an 'exceedingly light one.'" Kane Cnty., Utah v. United States, 772 F.3d 1205, 1215 (D. Utah 2014) (quoting George v. United States, 672 F.3d 942, 944 (10th Cir. 2012)). That said, the limitations period does not run when the Government acts in an "ambiguous or vague[ ]" manner as to its rights in the disputed property. Schultz, 886 F.2d at 1160.

Reasonable awareness of public access is the focus of the inquiry here because Plaintiffs' predecessors in interest would have then "kn[own]" or "should have known of the claim" to limit the scope of the Easement. See 28 U.S.C. § 2409a(g). The Government argues that publicly disseminated USFS maps from 1968, 1968, 1981, 2010, 2012 and 2011-2022 were all sufficient to impart a "reasonable awareness" upon Plaintiffs' predecessors that the Government was allowing public access on Cooper Ridge Road because, in the Government's words, these maps show that "Cooper Ridge Road is open to the public." ECF No. 26 at 26; see ECF Nos. 26-36, 26-37, 26-38, 26-39, 26-40. Because a statute of limitations defense is an affirmative defense, the court notes that the maps must unequivocally constitute sufficient notice to Plaintiffs' predecessors in interest as a matter of law for the Government to prevail on this argument at the motion to dismiss phase. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (cautioning that dismissal pursuant to affirmative defense on 12(b)(6) motion is only appropriate "if all facts necessary to the defense clearly appear on the face of the

complaint." (cleaned up) (emphasis in original)); see also Diop v. BMW of N. Am., LLC, 511 F. Supp. 3d 679, 684 (E.D.N.C. 2021) ("[D]efendant's statute of limitations affirmative defense can be raised in a Rule 12(b)(6) motion to dismiss; however, it is seldom appropriate to do so.").

In opposition, Plaintiffs argue that even if the court construed the maps to unambiguously indicate public access—a point they dispute—the maps alone still fail to unequivocally show that their predecessors in interest knew or should have known of public access. ECF No. 28 at 22–23. Plaintiffs emphasize that the Government's opening brief fails to cite a single instance of a court determining that sufficient notice existed to trigger the QTA's limitations period on a motion to dismiss. Id.

Indeed, in one case the Government cites, Plaintiffs highlight that the district court explicitly noted that the "United States first advanced its statute-of-limitations argument . . . in its Motion to Dismiss[ ]" and the court "determined at that time that it did not have sufficient information to dismiss the case on statute-of-limitations grounds." Hein, 2017 WL 9324517, at *3. In another case cited by the Government, the Ninth Circuit determined that an unattended gate or guardhouse adjacent to a military installation was insufficient to put a plaintiff on notice of claim against the Government. Schultz, 886 F.2d at 1158. While the military context made the existence of gates and guardhouses more commonplace, Plaintiffs still question how the court here could find "one map published on an esoteric website" sufficient evidence of notice when Schultz held that "obvious physical manifestation[s]" were insufficient. ECF No. 28 at 23.

The Government principally relies on two cases to support its position that maps alone are sufficient evidence of notice to Plaintiffs' predecessors in interest. The

Government first cites to Incline Ranch, LLC v. United States, 2025 WL 3268290 (D. Mont. Nov. 24, 2025). There, a district court granted the Government's motion for summary judgment on the ground that Section 2409a(g)'s limitations period had run, in part, because USFS maps showed that the disputed property was "open to the public for decades." Id. at *4. However, the court also relied on voluminous "witness testimony establishing that members of the public have openly used and parked along" the disputed property "for decades." Id. The other case—Park Cnty., Mont. V. United States, 626 F.2d 718, 721 (9th Cir. 1980)—is inapposite because, there, the Ninth Circuit affirmed a district court's finding a USFS sign and rock barrier placed in front of the sign were sufficient to give notice of its interest in a disputed trail.

In reply, the Government points the court to Sandbar Isle, LLC v. United States, 2024 WL 5237685, at *5–6 (S.D. Fla. Oct. 15, 2024) as an example of a district court resolving the QTA statute of limitations defense in the Government's favor on a Rule 12(b)(6) motion to dismiss. ECF No. 31 at 10–11. The court in Sandbar Isle concluded that various recorded documents in the plaintiff's chain of title put its predecessors in interest on "reasonable constructive notice" of an easement granted to the Government in 1931. 2024 WL 5237685, at *6. The Government then changes its position to align with its position in Sandbar Isle, asserting the Easement Deed, instead of the maps relied upon in its opening brief, gave sufficient notice of public access to Plaintiffs' predecessors in interest when it was executed in 1977 or when recorded in 1978. ECF No. 31 at 11–12. The court will not consider this argument because it was only raised on reply, and

Plaintiffs did not have the opportunity to respond to it.[7] See Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (citing United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).

In its opening brief, the Government fails to provide the court with a case relying on maps alone to resolve a question of notice under Section 2409a(g) in any procedural posture. See ECF No. 25. This court will not be the first. As such, the Government has failed to meet its burden of conclusively demonstrating that the maps relied upon provided sufficient notice to Plaintiffs' predecessors in interest to trigger the QTA's statute of limitations, and the court will not dismiss Plaintiffs' claim to limit the scope of the Easement on this basis.[8] See Goodman, 494 F.3d at 464.

**b. Easement Deed is Ambiguous**

Next, the Government argues that the language of the Easement Deed unambiguously permits public access, subjecting Plaintiffs' third claim to dismissal as a matter of law. Under South Carolina law, when a court is presented with "clear and unambiguous" language in a deed, the determination of the grantor's intent is a question

---

[7] For the same reason, the court declines to consider various other cases deciding the QTA statute of limitations issue in the Government's favor that were only raised for the first time on reply. ECF No. 31 at 12–13.

[8] Plaintiffs also argue that the maps are ambiguous as to whether public access was permitted over Cooper Ridge Road. See ECF No. 28 at 20–22. For purposes of this motion, the court finds that the maps alone are insufficient evidence of notice to Plaintiffs' predecessors in interest even assuming the maps unambiguously indicate that the public was free to use Cooper Ridge Road.

of law for the court[ ]" to decide. Snow v. Smith, 784 S.E.2d 242, 248 (S.C. Ct. App. 2016).

The Government points to the language of the easement deed stating that the grantor gives to the USFS "and its assigns[ ] an easement for a road on, over and across the following described land . . . ." ECF No. 25 at 29 (quoting ECF No. 26-3 at 3) (emphasis added by the Government). Specifically relying on the phrase "and its assigns," the Government argues that it "does not specifically exclude or limit public use of Cooper Ridge Road[ ]" and, therefore, "contemplates the agency's ability to allow public access." ECF No. 25 at 29.

Plaintiffs respond that this language "does not explicitly allow public use[,]" making the language ambiguous. ECF No. 28 at 25. The court agrees with Plaintiffs that the language is not explicit as to whether public access is permitted. Moreover, the Government fails to cite any authority that defines the term "assigns" or to then explain how that definition would unambiguously permit public access. In light of this failure, the court finds the termination clause to be ambiguous as to the scope of access for purposes of this motion. The court cannot grant a motion to dismiss when faced with a dispute over ambiguous language in a deed. See 1899 Holdings, LLC v. 1899 Liab. Co., 568 F. Appx. 219, 224 (4th Cir. 2014) ("In a contract dispute, the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.") (internal quotation marks omitted); Martin Marietta Corp. v. Int'l Telecomm. Satellite Org., 978 F.2d 140, 143 (4th Cir. 1992) (reversing district court's grant of motion to dismiss because the disputed contract language was "not free of ambiguity"); Hardwire LLC v. Goodyear Tire & Rubber Co., 360 F. Supp. 2d

728, 736 (D. Md. 2005) (holding that "an ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim"). Accordingly, the court finds that the Government has failed to meet its burden of demonstrating that the language of the Easement Deed unambiguously includes public access. Having determined that the Government cannot prevail on either argument in favor of dismissing Plaintiffs' claim to narrow the scope of the Easement, the court will allow the claim to proceed.

**5. Remaining Causes of Action**

Remaining are Plaintiffs' causes of action for inverse condemnation, unjust enrichment, and slander of title. The Government moves to dismiss each claim pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

**a. Inverse Condemnation**

Beginning with inverse condemnation, the Government argues the court lacks jurisdiction over such a claim because the Tucker Act assigns exclusive jurisdiction to the Court of Federal Claims for inverse condemnation claims greater than $10,000. ECF No. 26 at 30. Without addressing the legal merits of the Government's argument, Plaintiffs simply respond that "given the overlapping facts and Plaintiffs' right to plead in the alternative, the Court should in its discretion exercise concurrent jurisdiction over this claim." ECF No. 28 at 26. As such, the question is whether the Tucker Act assigns exclusive jurisdiction to the Court of Federal Claims for inverse condemnation claims seeking to recover more than $10,000.

28 U.S.C. § 1491(a)(1), commonly known as the Tucker Act, confers jurisdiction on the Court of Federal Claims "to render judgment upon any claim against the United

States founded . . . upon the Constitution, . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a), commonly known as the Little Tucker Act, grants the district courts concurrent jurisdiction with the Court of Federal Claims over claims against the United States "not exceeding $10,000 in amount" that are "founded . . . upon the Constitution . . . or for liquidated or unliquidated damages in cases not sounding in tort[.]"

The Federal Circuit and the Supreme Court of the United States have explained that "the obvious implication of these acts is that Congress intended the Court of Federal Claims to have 'exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is founded . . . upon the Constitution[.]'" Christopher Village, L.P. v. United States, 360 F.3d 1319, 1332 (Fed. Cir. 2004) (quoting E. Enters. v. Apfel, 524 U.S. 498, 520 (1998)); see also 14 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3657 (3d ed. 1998) ("Actions on [Tucker Act] claims exceeding $10,000, except suits in admiralty, must be brought in the Court of Federal Claims.").

Here, Plaintiffs are asserting an inverse condemnation claim, and so, the claim is "founded . . . upon the Constitution[ ]" and does "not sound[ ] in tort." See 28 U.S.C. § 1491(a)(1); see also Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1304 (Fed. Cir. 2008) (concluding that district court lacked jurisdiction over suit "brought against the United States . . . based entirely on the Fifth Amendment of the . . . Constitution[ ]" seeking "well over $10,000 in money damages"). The Tucker Act will thus vest exclusive jurisdiction in the Court of Federal Claims over this inverse condemnation claim if it is for greater than $10,000. See 28 U.S.C. §§ 1491(a)(1), 1346(a); Christopher

Village, L.P., 360 F.3d at 1332. Neither party addresses the amount of damages sought on Plaintiffs' inverse condemnation claim, see ECF Nos. 25, 28, 31, and the amended complaint does not state the amount of damages sought, Amend. Compl. ¶ 16 ("Plaintiffs are entitled to and pray for the following relief: . . . [d]amages as a result of the USFS inverse condemnation of the property."). When subject-matter jurisdiction is challenged, the burden falls on the plaintiff to establish the court's jurisdiction. Richmond, Fredericksburg, and Potomac R. Co., 945 F.2d at 768 ("When a Rule 12(b)(1) challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."). Because Plaintiffs have not offered any argument suggesting that their claim is for $10,000 or less, the court concludes that they have not met their burden of establishing the court's authority to adjudicate the inverse condemnation claim. See id. (When resolving Rule 12(b)(1) jurisdictional challenge, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that the court has jurisdiction over the suit.") (emphases added).

**b. Unjust Enrichment and Slander of Title**

As for Plaintiffs' slander of title and unjust enrichment claims, the Government argues that the United States has not waived its sovereign immunity on these claims. Plaintiffs wholly fail to address this argument. See ECF No. 28. Because Plaintiffs fail to address a jurisdictional challenge to these claims, that failure is a sufficient basis for dismissal. See Richmond, Fredericksburg, and Potomac R. Co., 945 F.2d at 768. That

said, the court finds that the Government prevails on the merits of its sovereign immunity argument as well.

As a preliminary matter, when the Government asserts that it has not waived sovereign immunity as to an FTCA claim pursuant to Rule 12(b)(1), courts in this circuit require the plaintiff to bear the burden of showing the FTCA waives sovereign immunity for the claim as a threshold jurisdictional issue. See Dyches v. United States, 2025 WL 4348433, at *2 (D.S.C. Dec. 8, 2025) (observing that when a defendant "challenge[s] subject matter jurisdiction under Rule 12(b)(1) . . . a party who brings an action against the United States pursuant to the FTCA bears the burden of pointing to . . . an unequivocal waiver of sovereign immunity.") (internal quotation marks and citations omitted); Krembel v. United States, 837 F. Appx. 943, 947 (4th Cir. 2020) (reviewing district court's dismissal of FTCA claim for lack of jurisdiction "pursuant to a Rule 12(b)(1) standard.").

On the unjust enrichment claim, the Government first establishes that the claim is equitable in nature. ECF No. 26 at 32 (citing Columbia Wholesale Co. v. Scudder May N.V., 440 S.E.2d 129, 130 (S.C. 1994) ("This court has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment.")). Second, the Government establishes that the FTCA does not waive sovereign immunity for equitable claims. ECF No. 26 at 32 (citing Pesnell v. United States, 64 F. Appx. 73, 74 (9th Cir. 2003) ("The FTCA does not contain a waiver of sovereign immunity for equitable claims.")); see also Talbert v. United States, 932 F.2d 1064, 1065–66 (4th Cir. 1991) (holding that FTCA's waiver of sovereign immunity applies to suits "for money damages" and concluding the court lacked jurisdiction to the extent the plaintiff sought non-monetary relief); 28 U.S.C.

§ 1346(b). As such, the court dismisses the unjust enrichment claim against the Government because Plaintiffs fail to address the Government's jurisdictional challenge and because the court, in fact, lacks jurisdiction over the claim. See Dyches, 2025 WL 4348433, at *2 (Burden is on plaintiff to establish that FTCA waives sovereign immunity on their claim when challenged pursuant to Rule 12(b)(1)).

On the slander of title claim, the Government first establishes that the FTCA does not waive sovereign immunity for claims of "slander, misrepresentation, [or] deceit[.]" ECF No. 26 at 32–33 (quoting 28 U.S.C. § 2680(h)). The Government then provides an example of a district court dismissing a slander of title claim on the ground that it was barred by sovereign immunity. ECF No. 26 at 33 (citing Antelline v. United States, 2004 WL 2042945, at *4 (N.D. Cal. Sept. 13, 2004) (rejecting plaintiffs' contention that slander of title "is a tort wholly distinct from the common law tort of slander" because of numerous federal and California state court decisions holding "that the tort of slander of title is a subset of the general tort of slander or defamation.")); see also Gleaton v. Orangeburg Cnty., 891 S.E.2d 390, 393 (S.C. Ct. App. 2023) ("Slander of title is grounded in the tort of injurious falsehood."); id. at 394 ("[I]n a slander of title case, malice includes a defendant making a slanderous statement[.]"). As such, the court dismisses Plaintiffs' slander of title claim against the Government because Plaintiffs fail to address the Government's jurisdictional challenge and because the court, in fact, lacks jurisdiction over the claim. See Dyches, 2025 WL 4348433, at *2.

**B. Motion to Strike Plaintiffs' Demand for a Jury Trial and to Bifurcate**

Weyerhaeuser moves to strike the Wiggins' demand for a jury trial pursuant to Rule 12(f), in addition to requesting the bifurcation of Plaintiffs' reformation claim from

their remaining claims pursuant to Rule 42(b), with the reformation claim to be tried first. ECF No. 34 at 1. Weyerhaeuser amended its motion to strike and bifurcate which, in addition to providing supplemental argument, clarified that its request to strike was made pursuant to Federal Rule of Civil of Procedure "12(f) and/or 39(a)[.]" ECF No. 38 at 1. The court first addresses the request to strike Plaintiffs' jury trial demand before turning to Weyerhaeuser's request to bifurcate.

**1. Request to Strike Plaintiffs' Demand for Jury Trial**

Weyerhaeuser moves to strike the Wiggins' jury trial demand pursuant to Federal Rule of Civil Procedure 12(f), arguing that the sales contract between the Wiggins and Weyerhaeuser for the sale of Revised Plot 038 contains an express waiver of the right to a jury trial. Id. at 1–2. The waiver states as follows:

> 21. **Waiver of Jury Trial**. Except as prohibited by law, each party hereto waives any right it may have to a trial by jury in respect of any litigation (action, proceeding or counterclaim) directly or indirectly arising out of, under or in connection with this contract, any document or agreement entered into in connection herewith and any of the transactions contemplated hereby.

ECF No. 34-1 at 5 (capitalization altered).

Prior to filing its amended motion, Weyerhaeuser only cites to two cases to support its waiver argument. First, it points to Mobilization Funding II, LLC v. Jessup Construction, LLC, 2024 WL4579153, *1 (D.S.C. Oct. 24, 2024) for the unremarkable proposition that "[a] party may contractually waive the right to a trial by jury." Weyerhaeuser then cites a South Carolina Supreme Court case, simply noting the Court

held that parties to a commercial transaction were bound by an express jury trial waiver.[9] Id. (citing Wachovia Bank, Nat'l Ass'n v. Blackburn, 755 S.E.2d 440, 443 (S.C. 2014)). The court notes that these authorities are of limited value on the issue of whether a party has waived its right to a jury trial in federal court. See Simler, 372 U.S. at 222 (holding that waiver of right to a jury trial "in federal courts is to be determined as a matter of federal law" in both diversity and other actions).

Plaintiffs respond that Weyerhaeuser's motion is untimely because Rule 12(f) requires that a motion to strike be made before "before responding to the pleading[,]" and Weyerhaeuser filed an answer prior to filing its motion to strike. ECF No. 36 at 2 (quoting Fed. R. Civ. P. 12(f)(2)). On the merits, Plaintiffs "deny [that] they knowingly and intelligently waived their rights to a jury trial as against Weyerhaeuser."[10] Id. at 3.

In reply, Weyerhaeuser observes that Rule 12(f) allows the court to strike material "on its own[ ]" even if its initial motion was not timely. Fed. R. Civ. P. 12(f)(1); see ECF No. 37 at 1. Weyerhaeuser asks the court to do so "now that the contract between the parties has been brought to [the court's] attention." ECF No. 37 at 1.

Weyerhaeuser then amended its initial motion to clarify that its request to strike was also made pursuant to Rule 39(a), as it "inadvertently failed to cite [the rule] in its initial motion." Id.; ECF No. 38. Then it cites to three district court cases for the proposition that "[c]ourts, when considering whether to strike a jury trial demand, have

---

[9] Weyerhaeuser also argues, in a footnote, that the Biltons lack standing to seek reformation of a "contract to which they were not a party." The court declines to address standing arguments in a motion to strike and bifurcate.

[10] Plaintiffs also note that if Weyerhaeuser takes the position that they did not intend convey the entirety of Revised Plot 038, then they will seek to amend their complaint "to include allegations of fraud or breach of contract against Weyerhaeuser." ECF No. 36 at 3.

turned to both Rule 12(f) and Rule 39(a)." ECF No. 38 at 2 (citing Mowbray, 536 F. Supp. 2d at 621; Perez v. Silva, 185 F. Supp. 3d 698, 700 (D. Md. 2016); Fluor Enters., Inc. v. Mitsubishi Hitachi Power Sys. Americas, Inc., 2019 WL 1620755, at *5 (E.D. Va. Apr. 16, 2019). On the merits, Weyerhaeuser simply notes that the sales contract "contains a valid and enforceable jury trial waiver that is both conspicuous and unambiguous." ECF No. 38 at 2.

Again responding in opposition, Plaintiffs distinguish Perez because, there, the district court "found that the plaintiff's case rested only in equity, and therefore determined the 'action is not subject to Seventh Amendment's jury guarantee.'" ECF No. 41 at 2 (quoting Perez, 185 F. Supp. 3d at 705). Plaintiffs are correct to observe that Weyerhaeuser has not argued they "have no federal right to a jury trial." ECF No. 41 at 2; see also ECF Nos. 34, 37, 38. Plaintiffs further note that Mowbray supports their position that a "request to strike is untimely prior to the completion of discovery[.]" Id. (citing Mowbray, at 536 F. Supp. 2d at 619 (considering enforceability of waiver of right to jury trial in contract provision shortly after summary judgment proceedings)). Plaintiffs then distinguish Fluor Enters., Inc. as well because, in that case, the party that had waived its right to a jury trial did not dispute that the waiver was knowing and voluntary. 2019 WL 1620755, at *4. Even in that circumstance, the district court still found it necessary to consider whether the waiver was enforceable because the party seeking to enforce the waiver "bears the burden[ ]" of showing its enforceability. Id. ("But because Fluor bears the burden, the court must analyze whether Fluor has shown the waivers are enforceable." (emphasis added)). Plaintiffs reiterate that the court "is currently without much of the evidence necessary to make even the preliminary

determination regarding whether the alleged waiver was knowing and voluntary." ECF No. 41 at 3. The only evidence relevant to the determination currently before the court, Plaintiffs contend, is the sales contract itself, which they call "a document over which there remains much dispute." Id.

In response to Weyerhaeuser's initial motion, Plaintiffs clearly dispute that the waiver was entered into knowingly and voluntarily, as would be required for the waiver to be valid. ECF No. 36 at 3; see Leasing Serv. Corp., 804 F.2d at 833. Despite this, Weyerhaeuser offers no substantive argument or evidence (in reply or in its amended motion) to show that the contract was entered into knowingly and voluntarily, see ECF Nos. 37, 38, and Weyerhaeuser offered no reply when Plaintiffs reiterated their objection as to whether the waiver was knowing and voluntary, see ECF No. 41 at 3. As such, at least for the time being, Weyerhaeuser has not met its burden, see Leasing Serv. Corp., 804 F.2d at 833, and so, the court denies the motion to strike without prejudice, cf. Mobilization Funding II, 2024 WL 4579153, at *1–4 (performing comprehensive analysis of whether plaintiff had contractually waived its right to a jury trial with the benefit of thorough briefing on the issue); AttorneyFirst, LLC v. Ascension Entm't Inc., 144 F. Appx. 283, 290 (4th Cir. 2005) ("A waiver of the right to trial by jury will not be lightly implied.")

**2. Bifurcation**

Regarding bifurcation, Weyerhaeuser seeks to bifurcate the trial of Plaintiffs' reformation cause of action from their remaining claims pursuant to Rule 42(b), such that the reformation claim would be tried first. ECF No. 34 at 1. Weyerhaeuser also requests

a stay of discovery on the remaining five causes of action pending the trial of Plaintiffs' second cause of action. Id.

Weyerhaeuser argues the reformation claim should be tried first because it is the "linchpin" of the "case from which all other claims against Weyerhaeuser are derived." Id. at 3–4. It also claims that should the court find that sales contract was not "so fraught with mutual mistake [such] that reformation should be ordered, then the Wiggins and the Biltons lose on every other cause action . . . asserted . . . against Weyerhaeuser." Id. at 4 (emphasis in original).

Plaintiffs contend that failing to reform the Weyerhaeuser-Wiggins Deed would not, as Weyerhaeuser asserts, resolve all other claims. ECF No. 36 at 5. This is because their claim for unjust enrichment would still be viable as "Weyerhaeuser will owe the Plaintiffs for the valuable improvements that Plaintiffs made to the road, the taxes Plaintiffs paid on the property, and any increase in value on the property from these improvements." Id. They, moreover, assert that "courts around the country recognize the wisdom in delaying a decision to bifurcate until the parties have completed discovery." Id. at 4 (citing United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1154 (E.D.N.Y. 1992) (declining to order bifurcation when the action had "not proceeded beyond the pleading stage," and the court was "unable to sort out the intricacies of the relationships among the defendants at th[at] time."); Contini v. Hyundai Motor Co., 149 F.R.D. 41, 41 (S.D.N.Y. 1993) (finding "decision in regard to bifurcation is premature" due to various issues that would persist until summary judgment phase); Banks v. Travelers Ins. Co., 60 F.R.D. 158, 163 (E.D. Pa. 1973) (recognizing "that there

would be little to be gained by" ordering bifurcation "at least before the end of discovery.")).

The court will deny the motion to bifurcate without prejudice because, at least at this time, the court finds bifurcation to be unnecessary and inefficient. First, conducting discovery and trial solely on the issue of reformation—to be followed by another round of discovery and another trial on any remaining causes of action—would waste judicial resources and only serve to unnecessarily delay the complete resolution of this action. The only benefit to any party would be to spare Weyerhaeuser the burden of discovery on the remaining claims against it. Those claims—for unjust enrichment and slander of title—are subsidiary to the primary disputes in this case over ownership of Cooper Ridge Road and the scope of the Easement. Second, time is of concern to the court in resolving this suit. Plaintiffs and the Government are at loggerheads over Cooper Ridge Road, with their disagreements extending back to at least 2021. Amend. Compl. ¶ 54; id. ¶ 60 ("USFS ordered Plaintiffs to remove the gate of face sanctions and penalties."); id. ¶ 53 ("Plaintiffs' placed gate on Cooper Ridge Road[.]"); ECF No. 25 at 13 (Duck hunter responding to erection of gate in blog post, stating "Got bolt cutters? A public road is a public road."). Plaintiffs, the Government, and the public all have an interest in having this matter decided expeditiously to minimize the potential for additional conflict between Plaintiffs and the Government, or Plaintiffs and the greater public. These concerns outweigh Weyerhaeuser's interest in avoiding the burdens of discovery on Plaintiffs' claims for unjust enrichment and slander of title. Simply put, "there would be

little to be gained by" granting this request at a good deal of expense. See Banks, 60 F.R.D. at 163. As such, the court will deny the motion to bifurcate without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** in part the Government's motion to dismiss as to Plaintiffs' fourth, fifth, and sixth claims against the Government, and **DENIES** in part the Government's motion as to Plaintiffs' first, second, and third claims against the Government. The court **DENIES** Weyerhaeuser's motion to strike Plaintiffs' demand for a jury trial and to bifurcate certain issues for separate trials without prejudice, and **DENIES** Weyerhaeuser's amended motion to strike.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 31, 2026**
**Charleston, South Carolina**